UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Maureen P. Brown, Administrator
of the Estate of Catherine Wade

   v.                              Civil No. 08-cv-209-JD
                                          Opinion No. 2009 DNH 187

City of Nashua, et al.


O R D E R

Maureen P. Brown, as the administrator of the estate of Catherine Wade, brings a civil rights action, with supplemental state law claims, against the City of Nashua and several Nashua police officers, arising from the circumstances of Catherine Wade's death. The defendants move for summary judgment. Brown concedes summary judgment on her civil rights conspiracy claim in Count II and her civil rights claim against the city in Count III but otherwise objects to the motion.


Background[1]

---

[1] The background facts are taken from the parties' memoranda. Although Brown submitted a variety of documents in support of her memorandum that do not meet the requirements of Federal Rule of Civil Procedure 56(e), the defendants did not object. See Desrosiers v. Hartford Life & Accident Co., 515 F.3d 87, 91 (1st Cir. 2008). Therefore, the documents submitted by Brown are also considered for purposes of deciding the summary judgment motion.

At approximately 6:30 p.m. on September 16, 2005, an employee at a rental center in Nashua called Nashua police because a disoriented person was in the store.  Officer Richard Treem responded to the call and arranged for an ambulance to take the person to Southern New Hampshire Regional Medical Center.  At the hospital, the person was identified as Catherine Wade.  She was treated and released.

Later that night, at approximately 11:30 p.m., Roger Barbour, the security guard at a CVS pharmacy, called the Nashua police about a person in the pharmacy who was acting strangely.  Officers Shawn Mailloux and Josue Santiago responded and found Catherine Wade, who was extremely disoriented.  Wade told the officers and employees that she had mental problems and that her father was Nicholas Cage, the movie actor.  The officers ran a warrants check and found warrants from two courts for Wade's arrest on charges of operating after suspension and "use without authority."  The officers took Wade into custody and drove her to the police station for booking.

Patrol Officer Richard Mosscrop and Detention Specialist Lawrence Garneau processed Wade at the police station.  The booking process was videotaped.[2]  Wade spoke softly but responded

---

[2]The defendants provided a DVD copy of the booking video, which the court has reviewed.

to the officers' questions, sometimes needing repetition.  She told them about the medications she was taking and asked about the reason for her arrest.  She had difficulty removing her earrings, which she worked on for a significant amount of time, and then got help to remove her necklace.  She was unsteady and appeared to be sleepy.  The officers asked her if she was alright and told her not to fall asleep.  She responded that she was awake.

   Mosscrop noticed that Wade was wearing a hospital bracelet and learned that she had been at the hospital earlier that day.  Garneau states that Wade appeared to be impaired and intoxicated.  Mosscrop states that Wade's behavior was consistent with other intoxicated people at the police station on Friday nights.  Both Mosscrop and Garneau state that Wade did not appear to require medical attention.  The officers interacted with Wade as if they expected her to understand them and be able to respond, which she did.  When the booking process was complete, Garneau put Wade in a cell, by herself, in the female cell block.

   Sergeant Sergio Hebra was the desk sergeant the night Wade came in.  He monitored the cells by watching closed circuit camera monitors and did not notice anything unusual relating to Wade.  He left at 6:30 a.m. and was relieved by Sergeant Kulikowski.  Kulikowski states that he also monitored Wade

3

through the closed circuit monitors and did not notice anything unusual.

Thomas Bolton was working as a detention specialist on the morning of September 17, 2005.  He arrived for work at 7 a.m. and took breakfast to the prisoners at about 8 a.m..  Wade was lying on her stomach on the bench in her cell with her face away from him and appeared to be breathing.  Bolton thought Wade was sleeping and did not disturb her.  Bolton reported that he heard Wade snoring at around 10:45.  He then decided it was time to wake Wade, but she did not respond.  When he entered the cell, Bolton found that Wade did not appear to be breathing, called an ambulance, and notified the desk sergeant of the situation.

The patient record from the emergency medical personnel who responded to the ambulance call shows an arrival time of 11:35 a.m.  The handwritten report states that Wade appeared to be cyanotic, that her hair, face, and the bench had notable amounts of vomit on them, that her left arm was stiff, and that her pupils were fixed and dilated.  The officers reported that three hours earlier Wade was heard snoring.  Wade was determined to be dead.  The final cause of death report stated the cause of her death was acute methadone intoxication.

Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

Discussion

Maureen Brown, as the administrator of the estate of Catherine Wade, after conceding her civil rights conspiracy claim and her civil rights claim against the City of Nashua, maintains a civil rights claim against Nashua Police Officers Bolton, Garneau, Hebra, Kulikowski, Mailloux, Mosscrop, and Santiago. Brown also brings state law claims against the officers and against Nashua, based on a theory of vicarious liability for the

police officers, listing intentional and negligent infliction of emotional distress and gross negligence.  The defendants move for summary judgment.

A.  Summary Judgment Standard

Brown argues that the defendants' motion must be denied because they failed "to meet their initial burden" to "show an absence of evidence in support of the plaintiff's claims."  Brown misunderstands the standard for summary judgment, which is stated above.

B.  Civil Rights Claim

Brown contends that the police officers who dealt with Wade during the evening of September 16 and the morning of September 17, 2005, violated her constitutional rights by failing to provide her with medical care.  The defendants argue that they are entitled to summary judgment because Brown cannot show that Wade had a serious medical condition or that they were deliberately indifferent to her medical needs.  Brown responds that evidence shows Wade's serious medical need and that the defendants ignored her condition.

    1.   <u>Standard</u>

When she died, Wade was being held on outstanding warrants for her arrest, and therefore the Fourteenth Amendment governs her right to medical care. <u>See</u> <u>Surprenant v. Rivas</u>, 424 F.3d 5, 13 (1st Cir. 2005). The Fourteenth Amendment, in this context, is applied using the Eighth Amendment standard. <u>Id.</u>; <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002). For a detainee, such as Wade, acts or omissions related to medical treatment violate the Fourteenth Amendment only if they were "sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Ruiz-Rosa v. Rullan</u>, 485 F.3d 150, 156 (1st Cir. 2007) (internal quotation marks omitted).

"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference means that [an officer] subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Ruiz-Rosa</u>, 485 F.3d at 156. Denial of needed medical care as a punishment and reckless decisions about medical care made with actual knowledge of the harm that could be easily

prevented are examples of deliberate indifference.  <u>Id.</u>
In contrast, negligence, inadvertence, and disagreement about the
course of treatment are not deliberate indifference.  <u>Id.</u>

   2.  <u>Analysis</u>

   In this case, Wade had not been diagnosed as needing treatment, and in fact, she had been treated and released from the hospital earlier in the evening, as evidenced by her hospital identification bracelet.  When she arrived at the police station, she was obviously impaired.  She was able to communicate with the officers but had difficulty standing, removing jewelry, and staying alert.  The officers who dealt with her believed that she was intoxicated with no more serious symptoms than other intoxicated detainees they saw on a regular basis, and the officers thought she needed to "sleep off" her intoxication.

   During the remainder of the night and the next morning, Wade remained motionless, lying on the bench in her cell until she died.  The record is somewhat unclear about when Wade was snoring, when she stopped breathing, and when she died.[3]  For

---

[3]The defendants appropriately challenge Brown's evidence purporting to establish a time of death three hours before emergency personnel examined Wade at the jail, and, therefore, that assertion is not credited.  <u>See</u> <u>Perez v. Volvo Car Corp.</u>, 247 F.3d 303, 314-15 (1st Cir. 2001).

8

that reason and for purposes of deciding the summary judgment motion only, the court will assume that a factual issue remains as to whether Wade had an obvious serious medical need at some point before she died.[4]

Brown contends that the officers' deliberate indifference to Wade's serious need for medical attention can be inferred from her condition when emergency medical staff found her dead in her cell and Bolton's statements about snoring and breathing that appear to be at odds with the time of Wade's death. Brown also argues that because Officer Treem took Wade to the hospital for treatment earlier in the evening and the security guard at CVS thought Wade required medical attention later, the defendant officers' failure to have Wade treated demonstrates deliberate indifference. The defendants respond that Brown's version of the facts does not show deliberate indifference.

Assuming that Officer Treem thought that Wade required medical attention when Treem called an ambulance for her at 6:30 p.m. on September 16, his decision does not inform the experience of the officers who participated in booking Wade at the jail five hours later. In the meantime, Wade <u>had</u> received medical

---

[4]A serious medical condition is not per se obvious when it results in death. <u>Jones v. Minn. Dep't of Corrs.</u>, 512 F.3d 478, 483 (8th Cir. 2008).

9

treatment and had been released from the hospital, as evidenced by the bracelet she was wearing during booking.  Treem's actions do not support an inference that the booking officers were deliberately indifferent.

Brown also relies on a statement given by the CVS security guard, Roger Barbour, to the investigator hired by Brown's attorneys.[5]  In the statement, Barbour explains that he was concerned for Wade's well being when he dealt with her at the CVS store late in the evening of September 16.  He states that although he has no first aid experience, he thought Wade was impaired by medication.[6]  Barbour also says that he called the police to deal with Wade, rather than an ambulance, because he did not feel her condition was an emergency.  As such, Barbour's statement does not provide evidence that the police officers who dealt with Wade were deliberately indifferent.

Even if the seriousness of Wade's medical condition were obvious, which is at best disputed, the record does not show that the officers who dealt with Wade that night actually drew that

---

[5]The statement is incorporated into the record through Barbour's "affidavit," which states only that Barbour was interviewed, that the interview was compiled into a report, and that Barbour would provide testimony that is consistent with the report.

[6]The defendants correctly challenge Barbour's opinion as lacking foundation.

inference.[7]  Instead, the officers state in their affidavits that Wade appeared to be intoxicated, similar to many detainees they deal with on a weekly basis, that they did not see anything about Wade that was out of the ordinary, and that they did not believe she required medical attention.[8]  Brown offers no evidence that the defendants drew the inference that Wade required medical attention because of a serious medical need and yet failed to provide it.

"[A]n [officer's] failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  "'Deliberate indifference' thus defines a narrow band of conduct in [the jail] setting."  Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006).  Even if the defendant officers should have known that Wade needed help or should have realized the seriousness of her condition, negligence is not

---

[7]Because deliberate indifference includes a subjective element, the opinions of Brown's expert witness, D. P. Van Blaricom, do not establish deliberate indifference for purposes of this analysis.

[8]Brown challenges the affidavits because they are from the defendants, implying that they are not truthful, which does not provide a basis to strike the affidavits, nor a reason to avoid summary judgment.  See Fed. R. Civ. P. 56(e); see also LaFrenier v. Kinirey, 550 F.3d 166, 167-68 (1st Cir. 2008).

actionable under the Fourteenth Amendment.  See Ruiz-Rosa, 485 At 156.

Because the record lacks evidence that the defendants were deliberately indifferent to Wade's serious medical need and Brown has not shown disputed material facts on that issue, the defendants are entitled to summary judgment on Brown's civil rights claim.  In addition, Brown conceded summary judgment on her civil rights conspiracy claim and her federal claim against the City of Nashua.  As a result, summary judgment is appropriate on all of Brown's federal claims.

C.  State Law Claims

The defendants seek summary judgment on Brown's state law claims.  Brown asserted federal jurisdiction in this case under 28 U.S.C. § 1331 and § 1343(a)(3).  Summary judgment is appropriate on all of Brown's civil rights claims, which are the predicate for federal question jurisdiction.  Therefore, the court declines to exercise supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice.  28 U.S.C. § 1367(c)(3); see also Alvarez-Torres v. Ryder Mem. Hosp., Inc., 582 F.3d 47, 53 (1st Cir. 2009); Rodriguez v. Doral Mtg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

Because the state law claims are dismissed without prejudice, Brown may pursue them in state court.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (doc. no. 12) on the plaintiff's federal claims is granted.  The state law claims are dismissed without prejudice.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                                                   _____
                                                                   Joseph A. DiClerico, Jr.
                                                                   United States District Judge

December 4, 2009

cc:   Brian J.S. Cullen, Esquire
       Lawrence A. Vogelman, Esquire

13